United States District Court
Southern District of Texas
**ENTERED**
July 29, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RONALD S. HINES, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 1:18-cv-155 |
| § | | |
| JESSICA QUILLIVAN, et al., § | | |
|     Defendants. § | | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On October 2, 2018, Plaintiff Ronald S. Hines ("Hines") filed suit against Defendants Jessica Quillivan, Keith Pardue, Sandra "Lynn" Criner, Michael White, Samantha Mixon, Randall Skaggs, Carlos Chacon, Sue Allen, and George Antuna, all in their official capacities[1] as members of the Texas State Board of Veterinary Examiners (collectively "Defendants" or "State Board"). Dkt. No. 1. Hines, a licensed veterinarian, seeks declaratory and injunctive relief to permit him to give medical advice to pet owners without physically examining the animal in question. Id. In his complaint, Hines raised claims that – as applied to him – the state law violates his First Amendment right to free speech and his Fourteenth Amendment right to equal protection. Id.

On December 14, 2018, the State Board filed a motion to dismiss. Dkt. No. 25. On June 11, 2019, the District Court granted the motion to dismiss, ruling that the law does not violate either Hines's First Amendment or Fourteenth Amendment rights. Dkt. No. 40. Hines appealed.

On February 25, 2021, the Fifth Circuit affirmed in part and reversed in part. The Fifth Circuit affirmed the dismissal as to the Fourteenth Amendment claim, but reversed as to the First Amendment claim. Dkt. No. 49. The Fifth Circuit remanded the case to the District Court, instructing the District Court to determine if the relevant state law regulates

---

[1] A suit against a government employee in their official capacity is "to be treated as a suit against the entity" which employs that defendant. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, the Court must treat the suit as one against the Texas State Board of Veterinary Examiners.

1

speech or conduct. Id. The parties have fully briefed the issue. Dkt. Nos. 50, 53, 58, 59, 64.

The motion to dismiss remains pending before the Court, as to the First Amendment issue. After reviewing the record and the relevant case law, it is recommended that the motion to dismiss be denied. The law in question is a content-based regulation of non-commercial speech, subject to strict scrutiny.

**I. Factual Background**

The facts of this case are largely undisputed, and the parties agree on the applicable legal principles. This case turns on the application of those principles to the facts.

Briefly put, Hines is a licensed veterinarian who has dispensed personalized medical advice to pet owners from across the country via email, phone calls, and video chats. Texas law prohibits licensed veterinarians from entering into a veterinarian-client-patient relationship unless they have personally viewed the animal at issue or the premises where the animal lives. In 2013, Hines was disciplined by the state veterinary board for violating this law; Hines sued at that time to challenge the law. After the district court found that Hines stated a claim to relief for violations of his First Amendment rights, the state veterinary board filed an interlocutory appeal.

On appeal, the Fifth Circuit held that the law did not violate Hines's First Amendment rights, because it was a content-neutral occupational regulation that only had an incidental impact on speech. Hines v. Alldredge, 783 F.3d 197 (5th Cir. 2015) ("Hines I"). In Hines I, the Fifth Circuit also found that Hines did not state a viable claim that his equal protection rights had been violated.

In the current case, Hines has returned to the Court, seeking only prospective relief – that he be permitted to resume his practice of dispensing medical advice to pet owners, even if he has never physically examined the animal or the premises where it lives. Hines asserted that the Supreme Court implicitly abrogated the Fifth Circuit's analysis in Hines I, when it issued its decision in National Inst. of Family & Life Advocates v. Becerra, 138 S. Ct. 2361, 201 L. Ed. 2d 835 (2018) ("NIFLA"). Hines further argues that in 2017, Texas

law was amended to permit medical doctors to practice telemedicine and it is a violation of his equal protection rights that he cannot do the same as a veterinarian.

On June 11, 2019, the District Court ruled that NIFLA did not abrogate Hines I, obligating the Court to follow the holding of Hines I. Dkt. No. 40. It also ruled that Hines's equal protection rights were not violated. Id.

On February 14, 2020, the Fifth Circuit issued its decision in Vizaline, L.L.C. v. Tracy, 949 F.3d 927, 933 (5th Cir. 2020). The district court in Vizaline had relied on Hines I in rejecting a challenge to a Mississippi law regulating professional surveyors. Id., at 930-31. The Fifth Circuit held that NIFLA abrogated Hines I "to the extent that [Hines I] relied on the professional speech doctrine." Id., at 933. The Fifth Circuit noted that it had "no opinion on whether the Texas regulation at issue in [Hines I] would have been upheld under the proper conduct-versus-speech analysis." Id., at 934, n. 9.

On December 2, 2020, in deciding the present case, the Fifth Circuit, in light of its holding in Vizaline, remanded the case to the Court to determine if the applicable Texas law regulates speech or conduct. Dkt. No. 48 ("Hines II"). It affirmed the finding that Hines's equal protection rights were not violated. Id.

To fully understand this case, the Court must set out the factual background of the state law regarding veterinary practice; Hines's veterinary practices; the prior litigation which resulted in the Fifth Circuit's decision in Hines I; and, finally, the Fifth Circuit's decision in Hines II.

**A. State Law**

Texas law defines veterinary medicine as "the diagnosis, treatment, correction, change, manipulation, relief, or prevention of animal disease, deformity, defect, injury, or other physical condition, including the prescription or administration of a drug, biologic, anesthetic, apparatus, or other therapeutic or diagnostic substance or technique." TEX. OCC. CODE § 801.002(5).

Furthermore, "[a] person may not practice veterinary medicine unless a veterinarian-client-patient relationship exists." TEX. OCC. CODE § 801.351(a).

A veterinarian must meet three statutory pre-requisites in order to have a client-patient relationship:

> (1) assumes responsibility for medical judgments regarding the health of an animal and a client, who is the owner or other caretaker of the animal, agrees to follow the veterinarian's instructions;
>
> (2) possesses sufficient knowledge of the animal to initiate at least a general or preliminary diagnosis of the animal's medical condition; and
>
> (3) is readily available to provide, or has provided, follow-up medical care in the event of an adverse reaction to, or a failure of, the regimen of therapy provided by the veterinarian.

Id.

Sufficient knowledge is established by either "examining the animal, or making medically appropriate and timely visits to the premises on which the animal is kept." TEX. OCC. CODE § 801.351(b) (hereafter "examination requirement"). State law further provides that "[a] veterinarian-client-patient relationship may not be established solely by telephone or electronic means." TEX. OCC. CODE § 801.351(c).

Violations of this statute are a class A misdemeanor. TEX. OCC. CODE § 801.504.

**B. Hines's Practice**

Hines is a Texas-licensed veterinarian, who has worked at the National Institutes of Health, SeaWorld San Antonio, and private animal hospitals throughout his career. Dkt. No. 1, pp. 5-6. He suffered a serious spinal cord injury, that did not leave him fully paralyzed, but "left him with lower-body numbness, caused problems with walking and his excretory functions, and rendered him highly susceptible to fatigue." Id., p. 5.

In February 2002, Hines "was effectively retired from veterinary medicine," but began publishing articles about "pet health and pet care" on a personal website. Dkt. No. 1, p. 6. The popularity of his articles led to him being "inundated with emails from across the country and around the world seeking his advice about specific animals." Id. Hines began giving personalized medical advice to pet owners, via email, telephone calls and video conferencing. Id.

Hines claims that most of his correspondence broke down into five categories: (1) people from overseas who had "no ready access to trustworthy veterinary care"; (2) pet owners who received conflicting diagnoses from local veterinarians and wanted his advice; (3) people who could not afford to take their animal to their local veterinarian; (4) "email from distressed people, frequently the elderly, who had dying pets and simply wanted a sympathetic ear"; and, (5) consultations from other licensed veterinarians. Dkt. No. 1, pp. 7-8.

If a pet owner contacted him, Hines "always requested the complete medical records from the owner's local veterinarian. If none existed, he attempted when practicable to find the most qualified veterinarian in the client's area and urged that he or she have the pet examined physically." Dkt. No. 1, p. 6. Hines admits that "he never physically examined the animals that were the subject of his advice." Id.

In November 2003, Hines began charging $8.95 for medical advice, to screen out minor requests, and help defray the costs of the website. Dkt. No. 1, p. 9. In September 2011, Hines raised the fee to $58, "which he determined through trial and error produced the most interesting questions and gave him the opportunity to do the most good." Id. If Hines believed that "his fee was a burden to someone in need, he refunded it and charged nothing." Id. In 2011, Hines had $2,797.24, in gross income from his website and advice. Id.

Hines "did not prescribe medication" or attempt to serve as "a pet owner's primary veterinarian." Dkt. No. 1, p. 10. He identified his key areas of help as: (1) identifying prescription errors, such as incorrect dosages or instructions; (2) helping pet owners identify serious or life-threatening conditions that required immediate assistance; (3) "identifying miscommunication" between a pet owner and veterinarian; (4) and/or "helping a pet owner decide how to proceed when local veterinarians had provided conflicting diagnoses." Id, pp. 9-10.

On March 12, 2012, the State Board informed Hines that he violated the statutory prohibition on practicing veterinary medicine without a valid veterinarian-client-patient

relationship. Dkt. No. 1, p. 14. "Hines immediately stopped providing veterinary advice electronically because he feared punishment." Id, p. 15.

On June 26, 2012, the State Board sent Hines a proposed agreed order, in which he would admit wrongdoing, receive a formal reprimand, have his license suspended for one year, with that suspension stayed to a probationary status, pay a $1,000 fine and re-take the Texas veterinary jurisprudence exam. Dkt. No. 1-1.

On July 6, 2012, Hines asked the State Board to give him additional time to review the proposed order so he could consult with counsel; his request was granted. Dkt. No. 1, p. 17.

On September 27, 2012, Hines's counsel met with the State Board in an "informal conference." Dkt. No. 1, p. 17. The State Board offered to reduce the fine to $500, but would not alter the suspension or the requirement that Hines re-take the jurisprudence exam. Id.

On November 1, 2012, Hines signed the agreed order, albeit with the $500 fine. Dkt. No. 1-2. In the order, Hines admitted wrongdoing, was formally reprimanded, his license was suspended for one year, but that suspension was converted to a probationary status and he agreed to re-take the jurisprudence exam. Id.

On March 25, 2013, the State Board held a regular meeting and ratified the punishment. Dkt. No. 1, p. 17.

On March 26, 2013, Hines passed the jurisprudence exam and paid the $500 fine. Dkt. No. 1, p. 17.

On March 26, 2014, the probationary period expired. Dkt. No. 1, p. 18. Hines "is presently authorized to practice veterinary medicine in Texas without having to perform any further act or seek additional permission or licensure." Id.

Hines has ceased providing veterinary advice over email, phone, and/or videoconferencing, lest he again run afoul of the statute. Dkt. No. 1, p. 27. "Hines would immediately resume providing individualized veterinary advice solely electronically, as he did before 2012, including via a real-time video chat service, if it were declared legal to do so." Id.

### C. Hines I

On April 4, 2013, Hines sued the then-members of the State Board in the United States District Court for the Southern District of Texas. Hines v. Alldredge, et al., Civil Case No. 1:13-56, Dkt. No. 1 (S.D. Tex. 2013) (Tagle, J.) (hereafter "District Case"). Hines alleged that the prohibition on providing veterinary advice without a pre-existing relationship violated: (1) his First Amendment right to freedom of speech; (2) his equal protection rights under the Fourteenth Amendment; and (3) his substantive due process rights under the Fourteenth Amendment. Id. Hines sought declaratory and injunctive relief. Id.

On May 20, 2013, the State Board filed a motion to dismiss, asserting that Hines had failed to state a claim upon which relief can be granted. District Case, Dkt. No. 44.

On February 11, 2014, the District Court denied the motion to dismiss in part and granted it in part. District Case, Dkt. No. 57.

As to the First Amendment claim, the District Court found that "the First Amendment applies to the professional regulations at issue in this case, and that the regulations, as applied to Hines's professional speech, are subject to heightened scrutiny and must be shown to be reasonable." District Case, Dkt. No. 57, p. 8 (internal quotations omitted). The District Court further found that, based on the facts pled in the complaint, it was "plausible that the regulations are not tailored to achieve a substantial state interest, and are therefore not reasonable regulations of speech within the confines of a professional relationship." Id, pp. 8-9.

As to the equal protection claim, the District Court found that, because the regulations at issue did not impede "fundamental personal rights" and was not "drawn upon inherently suspect distinctions," they were subject to rational basis review. District Case, Dkt. No. 57, p. 11. The District Court found that the regulations met the rational basis standard because, it was, "at a minimum, rational for the state to believe that requiring a physical examination of an animal to establish a veterinarian-client-patient relationship and allow a veterinarian to treat the animal would tend to prevent misdiagnosis, improper

treatment, and the subsequent increased risk of zoonotic disease." District Case, Dkt. No. 57, p. 12. The motion to dismiss was granted as to this claim. Id.

The Court found that the same rational basis analysis, that was used in dismissing the equal protection claim, applied to the substantive due process claim. District Case, Dkt. No. 57, pp. 13-14. Accordingly, the Court found that there was a rational basis for the statute and granted the motion to dismiss. Id.

On March 5, 2014, the State Board filed an unopposed motion for interlocutory appeal of the Court's resolution of the First Amendment claim. District Case, Dkt. No. 60. On March 27, 2014, the District Court granted the motion for interlocutory appeal. Id., Dkt. No. 63. On April 22, 2014, the State Board timely filed a notice of appeal. Id., Dkt. No. 64.

On March 27, 2015, the Fifth Circuit reversed the District Court, holding that the state statute did not infringe on Hines's First Amendment rights. Hines v. Alldredge, 783 F.3d 197, 198 (5th Cir. 2015) (Hines I). The Court wrote that:

> We begin – and end – our First Amendment analysis by recognizing the statute at issue in this case for what it is. The challenged state law prohibits the practice of veterinary medicine unless the veterinarian has first physically examined either the animal in question or its surrounding premises. It does not regulate the content of any speech, require veterinarians to deliver any particular message, or restrict what can be said once a veterinary-client-patient relationship is established.

Hines I, 783 F.3d at 201.

The Fifth Circuit held that the examination requirement fell "squarely" within Texas's "broad power to establish standards for licensing practitioners and regulating the practice of professions." Hines I, 783 F.3d at 201 (quoting Gade v. National Solid Wastes Mgm't Ass'n, 505 U.S. 88, 108 (1992)). It also noted that "state regulation of the practice of a profession, even though that regulation may have an incidental impact on speech, does not violate the Constitution." Hines I, 783 F.3d at 201.

The Fifth Circuit found that the examination requirement was a "narrow" and content-neutral regulation. Hines I, 783 F.3d at 201-02. It further found that, to whatever

8

extent the regulation implicated Hines's First Amendment rights, it was "incidental" to the regulation and "denies the veterinarian no due First Amendment right." Id.

The Fifth Circuit affirmed the District Court's dismissal of the equal protection and due process claims. Hines I, 783 F.3d at 201-02. The Fifth Circuit remanded the case "for the entry of judgment in favor of the defendants." Hines I, 783 F.3d at 203.

On April 23, 2015, the District Court entered final judgment in favor of the State Board. District Case, Dkt. No. 72.

On November 30, 2015, the Supreme Court denied Hines's petition for writ of certiorari. Hines v. Alldredge, 136 S. Ct. 534 (2015).

### D. Hines II

On October 2, 2018, Hines again sued the State Board, seeking declaratory and injunctive relief. Dkt. No. 1. Hines claims that the examination requirement violates his First Amendment right to free speech and his Fourteenth Amendment right to equal protection.

Hines argued that his First Amendment claim is not barred by the decision in Hines I, because the Supreme Court's decision in NIFLA "establishes that the Fifth Circuit was incorrect as a matter of constitutional law" when it decided Hines I. Dkt. No. 1, p. 25. He argues that his Fourteenth Amendment claim is similarly not barred because a change in Texas law, allowing doctors to practice telemedicine without including an examination requirement, changed the operative facts that Hines I was based on.

Hines seeks to have the examination requirement declared to be unconstitutional and an injunction enjoining the State Board from enforcing it against him and other veterinarians. Dkt. No. 1, p. 34. Hines seeks only prospective relief and does not seek "to reopen and undo the final judgments of either" the district court or Fifth Circuit decision in Hines I. Id., p. 29.

On December 14, 2018, the State Board timely filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 25. As to the First Amendment claim, the State Board argued that this Court is bound by the Fifth Circuit's decision in Hines I and that NIFLA "did not unequivocally overrule" the Fifth Circuit's analysis in Hines I. Dkt. No. 25, p. 19.

9

As to the Equal Protection Clause claim, the state board argued that "(1) a veterinarian is not similarly situated to a medical doctor and (2) even if they were, the physical examination requirement passes rational basis review, just as it did in Hines I." Dkt. No. 25, p. 14.

On February 19, 2019, the undersigned issued a Report and Recommendation, recommending that the motion to dismiss be granted as to the First Amendment claim, but denied as to the Equal Protection Claim. Dkt. No. 30.  As to the First Amendment claim, the Report and Recommendation stated that it was "foreclosed by the Fifth Circuit's decision in Hines I." Id., p. 21.

On June 11, 2019, the District Court adopted the Report and Recommendation in part and declined to adopt it in part. Dkt. No. 40.  It adopted the Report and Recommendation as to the First Amendment claim, finding that it was foreclosed by Hines I. Id., p. 10.  It also dismissed the Equal Protection claim, declining to adopt the Report and Recommendation. Id.  On July 2, 2019, Hines filed a notice of appeal. Dkt. No. 41.

On February 14, 2020, the Fifth Circuit issued its decision in Vizaline, holding that "that NIFLA abrogated [Hines I] to the extent that [Hines I] relied on the professional speech doctrine." Vizaline, 949 F.3d at 933.

Accordingly, on December 2, 2020, the Fifth Circuit remanded the First Amendment claim back to this Court, to determine whether the examination requirement was a regulation of speech or conduct, in light of its holding in Vizaline. Dkt. No. 48.  At the same time, the Fifth Circuit affirmed the dismissal of Hines's Equal Protection claim. Id.  On February 17, 2021, the case was formally remanded to the District Court. Id.

**II. Procedural Background**

On February 25, 2021, this Court ordered the parties to brief the issue of whether the examination requirement regulates speech or conduct, in light of the Fifth Circuit's remand order. Dkt. No. 49.

On April 12, 2021, Hines filed his brief, arguing that the examination regulates speech. Dkt. No. 50.  He argues that the speech or conduct question cannot be answered on a general basis, but that the Court must consider whether Hines' speech or conduct

10

triggered application of the law against him. Id., pp. 13-14. Because Hines only engaged in speech, he argues that the law, as applied to him, is a regulation of speech and is subject to strict scrutiny. Id.

On May 17, 2021, the State Board filed its brief, arguing that the examination requirement solely regulates conduct. Dkt. No. 53. It argues that the examination requirement "regulates only the methods by which Hines must establish a patient-relationship with the particular animals he diagnoses and treats, which is a regulation of his conduct." Id., p. 9.

On June 1, 2021, Hines filed his reply brief, reiterating that his speech triggered the statute, making it a regulation of speech. Dkt. No. 59.

On that same day, the American Veterinary Medical Association and Texas Veterinary Medical Association filed an amicus brief, arguing that the examination requirement is "a content-neutral rule with the primary objective of regulating the conduct of the profession." Dkt. No. 58, p. 13 (internal quotation marks omitted).

On June 21, 2021, Hines filed a brief, replying to the arguments made in the amicus brief. Dkt. No. 64.

**III. Applicable Law**

    **A. Section 1983**

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979).  To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

**B. Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." Ferguson v. Bank of New York Mellon Corp., 802 F.3d 777, 780 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. Id. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).  All well-pled facts must be viewed in the light most favorable to the plaintiff. Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal, for failing to state a claim upon which relief can be granted, is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

**IV. Analysis**

The Fifth Circuit remanded this case for the District Court "to make the initial evaluation of whether conduct or speech is being regulated." Dkt. No. 48.

The Court begins the analysis by noting that this case is an "as applied" challenge to the physical examination requirement. That is, Hines is challenging the application of the law to his past practices, which he would engage in if he were legally permitted to do so. The Court is only examining the statute in relation to the facts of this particular case, and not whether the law would be constitutional as applied to every action taken by every veterinarian in Texas. Justice v. Hosemann, 771 F.3d 285, 292 (5th Cir. 2014); see also Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) ("An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others.").

Because this is an "as applied" challenge, the Court must consider whether the examination requirement regulates Hines's speech or conduct. See Vizaline, L.L.C. v. Tracy, 949 F.3d 927, 931 (5th Cir. 2020) ("the relevant question is whether, as applied to Vizaline's practice, Mississippi's licensing requirements regulate only speech, restrict speech only incidentally to their regulation of non-expressive professional conduct, or regulate only non-expressive conduct") (emphasis added). See also Hodge v. Talkin, 799 F.3d 1145, 1156 (D.C. Cir. 2015) ("An ordinary as-applied challenge, by contrast, asks a court to assess a statute's constitutionality with respect to the particular set of facts before it."). Indeed, "a statute or a rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." Boddie v. Connecticut, 401 U.S. 371, 379 (1971).

With this limitation in mind, the Court turns to whether the examination requirement regulates speech or conduct, as applied to Hines. The Court does not consider whether the law is generally aimed at regulating conduct, but whether Hines's actions that triggered coverage of the examination requirement were speech or conduct. Holder v. Humanitarian L. Project, 561 U.S. 1, 28 (2010) (citing Cohen v. California, 403 U.S. 15 (1971)).

13

Under the facts as pled, Hines only engages in speech. He speaks with animal owners about the specific medical issues facing their pet, such as any prescription errors; whether the pet is suffering from a condition that requires immediate assistance; or serving as a second medical opinion. Notably, he does not prescribe medications to pets that he has not personally examined. Dkt. No. 1, pp. 9-10. All of his actions are taken via email and telephone communications.

The State Board argues that the act of diagnosing and recommending treatment is pure conduct, that there is no constitutional difference between prescribing aspirin for a patient and putting aspirin in a patient's mouth. While it may be true that prescribing medication is conduct — or at least conduct that incidentally involves speech — those are not the facts of this case as applied to Hines. Instead, he is disseminating personalized medical advice to animal owners. There can be no question, but that, "the creation and dissemination of information are speech within the meaning of the First Amendment." Sorrell v. IMS Health Inc., 564 U.S. 552, 570 (2011).

The Court must be careful not to manipulate the law to construe Hines's speech as conduct. The "enterprise of labeling certain verbal or written communications 'speech' and others 'conduct' is unprincipled and susceptible to manipulation." Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1308 (11th Cir. 2017). The Court should label speech as speech when conducting this analysis. See Pacific Coast Horseshoeing Sch., Inc. v. Kirchmeyer, 961 F.3d 1062, 1069 (9th Cir. 2020) (a law that "regulates what kind of educational programs different institutions can offer to different students" was a regulation of speech and not conduct); Otto v. City of Boca Raton, Fla., 981 F.3d 854, 862 (11th Cir. 2020) (law prohibiting therapists from offering therapy to eliminate or reduce same-sex attractions was a regulation of speech and not conduct); New Hope Fam. Servs., Inc. v. Poole, 966 F.3d 145, 176 (2d Cir. 2020) (law banning private adoption agency from discriminating against same-sex couples was a regulation of speech, not conduct, as applied to a faith-based organization). See also Expressions Hair Design v. Schneiderman, — U.S. —, 137 S. Ct. 1144, 1151 (2017) (law which regulated how stores could communicate

prices for paying with cash versus paying with a credit card was a regulation of speech rather than conduct).

Pacific Coast Horseshoeing is instructive to the facts of this case. California law prohibited students who did not possess a high school diploma, or its equivalent, from enrolling in a post-secondary education institution unless the school required them to take an examination from a list of approved exams. Id., 961 F.3d at 1066. If the student did not achieve a passing score, then the school could not enroll the student. Id.

A student without a high school diploma wished to enroll in a horseshoeing school, but refused to take an examination because there was no examination that tested horseshoeing knowledge or skills. Id. at 1067. The student, the school, and the head of the school sued the state, arguing that the law violated their First Amendment rights. Id. The state argued that the law was a regulation of conduct – it merely delineated the circumstances under which a school could execute an enrollment agreement with a student – and did not implicate the First Amendment. Id., at 1069.

The Ninth Circuit held that the law regulated speech because "vocational training is speech protected by the First Amendment." Pacific Coast Horseshoeing, 961 F.3d at 1069. The Ninth Circuit went on to state that, "when there is a speaker who is willing to convey information, state restrictions of the right to receive information produce actual injury under the First Amendment." Id. (cleaned up)[2].

In this case, the State Board argues that if the Court considers the examination requirement to be a speech restriction, it would "implicate the current regulatory regimes of all professions—especially in our newly virtual world." Dkt. No. 53, p. 9. California made the same argument in Pacific Coast Horseshoeing, asserting that if the Ninth Circuit found that regulation to be a restriction of speech, it would "transform every law or

---

[2] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3, 234 Md. App. 742, 174 A.3d 493 (Md. Ct. Spec. App. Dec. 1, 2017); see also Brownback v. King, ––– U.S. –––, 141 S. Ct. 740 (2021) (using "cleaned up").

regulation applicable to postsecondary educational institutions into a direct regulation of speech requiring strict scrutiny." Pacific Coast Horseshoeing, 961 F.3d at 1070. The Ninth Circuit rejected this argument, explaining that while the state "can subject individuals and entities to generally applicable economic regulations without creating constitutional problems," the proper question is whether the regulation in question "implicates heightened First Amendment scrutiny." Id. (cleaned up).

As applied to Hines, the examination requirement regulates speech and not conduct. It prevents him from engaging in phone calls and emails with animal owners to give them specific medical advice. If he were prescribing medication or otherwise treating the animals, he would be engaging in conduct. The examination requirement serves as a barrier to prevent Hines from engaging in protected speech.

Having determined that the examination requirement regulates Hines's speech, the Court must determine what level of scrutiny applies to the examination requirement. The key question in this instance is whether the regulation is content-neutral or content-based.

The Fifth Circuit recently clarified the test for whether a regulation is content-neutral or content-based. Reagan National Advert. of Austin, Inc. v. City of Austin, 972 F.3d 696, 703 (5th Cir. 2020), cert. granted sub nom. Austin, TX v. Reagan National Advert., No. 20-1029, 2021 WL 2637836 (U.S. June 28, 2021).[3] In that case, the Fifth Circuit held that the test is whether "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." Id. It added that there may be times that "a distinction 'defining regulated speech by its function or purpose' is drawn based on the message the speaker conveys and is thus facially content based and subject to strict scrutiny." Id. In Reagan National, the Fifth Circuit abrogated its former test, which was

---

[3] The Court must follow the holding of Reagan National, even though the Supreme Court has granted the petition for writ of certiorari. U.S. v. Islas-Saucedo, 903 F.3d 512, 521 (5th Cir. 2018) ("we have traditionally held that even when the Supreme Court has granted certiorari in a relevant case, we will continue to follow binding [Fifth Circuit] precedent."); Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006) (holding that Fifth Circuit precedent "remains binding until the Supreme Court provides contrary guidance")

16

based on the justification for the regulation, rather than whether the regulation drew distinctions between messages.[4] Id.

In Reagan National, the Fifth Circuit explained that if a regulation draws any distinctions based on the content of the communications, it is a content-based regulation, even if the justification for the speech is content-neutral. Id., 972 F.3d at 703. The Fifth Circuit further added that "a distinction can be facially content based if it defines regulated speech by its function or purpose," even if it is not discriminating against any specific viewpoint. Id. at 706.

In this case, the regulation draws distinctions between the messages that Hines can lawfully convey to animal owners. Hines cannot "diagnose" an animal if he has not previously examined the animal in person. TEX. OCC. CODE § 801.002(5)(A); 801.351(c). This is a content-based regulation based on the function or purpose of the speech. If an animal owner asks Hines for his general view on ivermectin, the regulation does not prohibit him from offering a general opinion of its safety and efficacy. If that same animal owner lists a series of symptoms that the animal is exhibiting and asks Hines if ivermectin would be an appropriate treatment, then Hines cannot respond unless he has previously seen the animal in person. This is a content-based inquiry, requiring the State Board to review the contents of Hines's speech to determine if he is diagnosing any diseases.

Furthermore, the commercial speech exception does not apply in this case. See Express Oil Change, L.L.C. v. Mississippi Bd. of Licensure for Pro. Engineers & Surveyors, 916 F.3d 483, 487 (5th Cir. 2019) ("Although the Constitution protects commercial speech, that protection is more limited than for most other speech"). "Commercial speech is speech that _proposes_ a commercial transaction," rather than "speech for profit." Serafine v. Branaman, 810 F.3d 354, 365 (5th Cir. 2016) (emphasis original). Put another way, commercial speech proposes a transaction; the transaction itself is not commercial speech, even if it involves someone who is being paid to speak. See

---

[4] The Court notes that when it issued its original Report and Recommendation (Dkt. No. 30), it did not have the benefit of the Fifth Circuit's decision in Reagan National.

Hoover v. Morales, 164 F.3d 221, 225 (5th Cir. 1998) ("the fact that one is paid to be an expert witness does not make his testimony commercial speech") (cleaned up).

The fact that Hines receives compensation for his speech does not transform it into commercial speech. Commercial speech is determined by its content, not whether the speaker was paid for expressing it. Serafine, 810 F.3d at 365 ("merely receiving compensation for psychological services cannot be commercial speech"); Hoover, 164 F.3d at 225 ("If all it takes to make speech commercial is that the speaker is paid to say it, then every writer with a book deal, every radio D.J., and every newspaper and television reporter is engaged in commercial speech").

If Hines advertises that he will answer your veterinary questions for $58, that advertisement is commercial speech. "In sum, commercial speech, with its lesser protection, is at bottom advertising." Pruett v. Harris Cty. Bail Bond Bd., 499 F.3d 403, 409 (5th Cir. 2007), abrogated on other grounds by Reagan National at 703, n. 3. However, the actual answers he provides to paying animal owners are not commercial speech. Those answers are the conduct prohibited by the regulation, so the regulation does not cover commercial speech.

Because the examination requirement is a content-based regulation of non-commercial speech, it is subject to strict scrutiny. Reagan National, 972 F.3d at 709. Under that standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Id. (brackets original). As such, the Court should deny the motion to dismiss and permit the case to move forward to discovery, which would allow the State Board to bring forth any evidence it has to meet its burden. See Rangra v. Brown, 566 F.3d 515, 527 n. 32 (5th Cir.), on reh'g en banc, 584 F.3d 206 (5th Cir. 2009) (noting that strict scrutiny review may require development of the record so the state can show that the law meets the standard).

**V. Recommendation**

It is recommended that the motion to dismiss filed by the State Board, Dkt. No. 25, be denied as to the First Amendment claim.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on July 29, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge