UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| RONALD S. HINES, D.V.M., <br><br> *Plaintiff*, <br><br> v. <br><br> JESSICA QUILLIVAN, D.V.M., <br> in her official capacity as President of the <br> Texas State Board of Veterinary Medical <br> Examiners, et al., <br><br> *Defendants*. | Civil Action No. 1:18-CV-00155 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS
TO THE SECOND REPORT AND RECOMMENDATION**

The Board's objections should be overruled. There is very little in them that the Board has not repeated since 2013. As ever, the Board's position is that a professional's speech is conduct, so it is regulable like other conduct. Dr. Hines' position is that a professional's speech is speech, so it is protected like other speech.

The problem for the Board is that it isn't 2013 anymore. The Fifth Circuit agrees with Dr. Hines. His loss in *Hines I* has been abrogated. The government no longer gets to take professional speech out of the First Amendment by calling it "conduct," "diagnosis," "practice," or some other word. Since *Vizaline*, "First Amendment protection" has not "turn[ed] on whether the challenged regulation is part of an occupational-licensing scheme." *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 932 (5th Cir. 2020). That holding means that if the Board wants to stop Dr. Hines from writing emails about one specific topic, its prohibition must satisfy strict scrutiny. The Report and Recommendation got that exactly right. Thus, the Court should overrule the Board's objections and adopt the R&R.

1

To avoid duplicative briefing, Dr. Hines outlines the Board's views and directs the Court to his earlier briefing refuting it. That briefing establishes why Dr. Hines' speech is not conduct (Part I), why it is not incidental to conduct (Part II), and why restrictions on it are subject to strict scrutiny (Part III). This response also addresses the Board's two new but unpersuasive points: that medical malpractice laws mean medical speech is conduct (Part II) and that the standard for commercial speech applies (Part III).

I.   **DR. HINES' SPEECH IS SPEECH, NOT CONDUCT.**

The R&R got it right. Magistrate Judge Morgan accurately summed up the factual allegations this way: Dr. Hines "speaks with animal owners about the specific medical issues facing their pet." R&R 14. Based on that, Judge Morgan concluded that Dr. Hines' "personalized medical advice to animal owners" is speech because "the creation and dissemination of information are speech within the meaning of the First Amendment." R&R 14 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011)). In short, speech is speech, and speech gets First Amendment protection.

The Board objects based on the same argument it made in its initial briefing: "The fact that Hines effectuates the practice of veterinary medicine through the spoken or written word does not change its fundamental nature as conduct." Bd. Objections 4; *see also* Bd. Speech–Conduct Resp. (ECF 53) at 3–6. But, as Dr. Hines has explained, this labeling game—calling speech "the practice of veterinary medicine"—does not affect the First Amendment analysis. Written advice does not become conduct because Dr. Hines is a veterinarian. Under *Vizaline*, "First Amendment scrutiny does not turn on whether censored speakers are professionals." 949 F.3d at 933. So labeling speech "the practice of a profession" doesn't just get the Board nowhere, it is the exact doctrinal error that the Supreme Court and Fifth Circuit have now jettisoned. *See* Hines Speech–Conduct Br. (ECF 50) at 8–14; Hines Speech–Conduct Reply (ECF 59) at 3–13. This recent, controlling precedent is the

law. An obsolete three-justice concurrence from 1985 is not. *See* Bd. Objections 4 (relying on a theory from *Lowe v. SEC*, 472 U.S. 181, 230 (1985) (White, J., concurring)).

### *Pacific Coast*

The Board's only new argument is that the R&R misreads a Ninth Circuit case called *Pacific Coast*. That case concerned a California regulation prohibiting vocational schools from enrolling certain students. *See* Hines Speech–Conduct Reply 12. A school and a would-be student challenged the law, arguing that it violated the school's First Amendment right to communicate a message and the would-be student's First Amendment right to hear the message. In response, the state defended the law as "a consumer-protection provision that regulate[d] only non-expressive conduct," that is, who could execute enrollment agreements with the school. *Pac. Coast Horseshoeing Sch. v. Kirchmeyer*, 961 F.3d 1062, 1068 (9th Cir. 2020). Ultimately, the Ninth Circuit agreed with the plaintiffs and held that the law regulated speech because it affected the school's ability to talk to students. *Id.* at 1069. It did not matter whether the government called the law a restriction on "enrollment agreements" (or "schooling" or "education" or anything else). *Id.* at 1068–69. The point was that the state was trying to restrict communication. In the R&R, Judge Morgan found this case persuasive and endorsed the Ninth Circuit's holding that "when there is a speaker who is willing to convey information, state restrictions of the right to receive information produce actual injury under the First Amendment." R&R 15 (quoting, with cleanup, *Pac. Coast*, 961 F.3d at 1069).

In its objections, the Board tries to distinguish *Pacific Coast*. In the Board's view, *Pacific Coast* is about "generalized" advice, while this case is about "specific" advice. Bd. Objections 4, 6. True, *Pacific Coast* is not about individualized advice, but that isn't the point. The R&R discusses *Pacific Coast* because it shows a federal circuit court refusing to play the kind of labeling game that the Board keeps insisting on here. *Pacific Coast* establishes that speech is

3

speech even if the state calls it conduct. And, as the R&R recognizes, *Pacific Coast* is not alone. See R&R 14 (citing other circuit cases). Indeed, in just the few days since Judge Morgan issued the R&R, yet another court has rejected the argument that preventing a professional from speaking "is not a regulation of speech but [is] rather a regulation of professional conduct." *Brandt v. Rutledge*, 2021 WL 3292057, at *6 (E.D. Ark. Aug. 2, 2021) (holding that an Arkansas ban on discussing gender-dysphoria treatment triggered First Amendment scrutiny). Courts do not play the Board's labeling game, and Judge Morgan was correct to conclude so.

## II. DR. HINES' SPEECH IS NOT INCIDENTAL TO ANY CONDUCT BECAUSE THERE IS NO CONDUCT.

The Board also objects to the R&R based on the idea that "Hines's speech is only incidental to the overarching conduct of the practice of veterinary medicine." Bd. Objections 7–8. Thus, the Board argues, the R&R should have "conclude[ed] that the Physical examination requirement's regulation of Hines's speech is only incidental to the regulation of his conduct." *Id.* at 7.

This objection is wrong for all the reasons Dr. Hines has briefed already. *See* Hines Speech–Conduct Br. 10–13; Hines Speech–Conduct Reply 4, 9–11. The Board has always been wrong as a matter of common sense: Dr. Hines' speech cannot be incidental to conduct because he doesn't *do* anything; he just speaks to people. It is also wrong as a matter of doctrine. Restrictions on Dr. Hines' speech cannot be "incidental to the overarching conduct of the practice of veterinary medicine," Bd. Objections 7, because that would resurrect the dead professional-speech doctrine. The question here has never been "what does the Veterinary Licensing Act regulate in general?" As Judge Morgan correctly recognized: "The Court does not consider whether the law is generally aimed at regulating conduct, but whether Hines's actions that triggered coverage of the examination requirement were speech or conduct." R&R 13 (citing

*Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) and *Cohen v. California*, 403 U.S. 15 (1971)). What triggers application of the Act to Dr. Hines are his emails on a specific topic: pet advice. Hence, as applied, this case involves a regulation of speech, not conduct.

### *Malpractice*

The Board's only new idea is that the existence of medical malpractice torts proves that Dr. Hines' speech can be regulated like conduct. Bd. Objections 7. This is wrong. True, *NIFLA* said that "[l]ongstanding torts for medical malpractice, for example, 'fall within the traditional purview of state regulation of professional conduct.'" *Id.* (quoting 138 S. Ct. at 2373).

But that single sentence does none of the work the Board hopes. Setting aside that most medical malpractice claims will be for actual conduct (leaving a surgical instrument inside someone, for example), the fact that someone can be held accountable for their speech in specific circumstances hardly takes that category of speech itself outside the First Amendment. The many cases protecting medical speech—*NILFA*, *Otto*, *Wollschlaeger*, *King*, *Conant*—make no sense if the existence of medical malpractice torts means that medical advice gets no First Amendment protection.[1] The mere *possibility* that individualized advice could be so bad as to constitute malpractice does not take the entire category of advice outside the First Amendment. Nor does the Board's theory make sense in the wider First Amendment context. Some speech—defamation, for example—can be punished after the fact when it causes specific legal harms. But that does not mean that whole categories of speech are off limits because defamation is possible. Newspaper editorials *can* defame someone, for example, but a law preventing newspapers from

---

[1] *NIFLA v. Becerra*, 138 S. Ct. 2361 (2018) (pregnancy counseling); *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) (psychotherapy); *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293 (11th Cir. 2017) (en banc) (medical advice about firearms); *King v. Governor of N.J.*, 767 F.3d 216 (3rd Cir. 2014) (psychotherapy); *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) (medical advice about marijuana).

editorializing is obviously unconstitutional. *See United States v. Alvarez*, 567 U.S. 709, 716–22 (2012) (Kennedy, J., for the plurality) (noting that "defamation cases where the law permits recovery for tortious wrongs" do not justify "expand[ing] liability in a different, far greater realm of discourse"). So too here. The possibility of tortious speech—whether malpractice, defamation, or something else—does not justify the sort of broad prophylactic prior restraint on speech that the Board wants the Court to impose. Simply put, there is no conflict between recognizing that Dr. Hines' emails are speech and the existence of medical malpractice torts.[2]

### III. AS APPLIED TO DR. HINES, THE PHYSICAL-EXAMINATION REQUIREMENT IS SUBJECT TO STRICT SCRUTINY.

Finally, the Board objects to the R&R's ultimate recommendation: that, as applied to Dr. Hines, the physical-examination requirement is subject to strict scrutiny because it is a content-based burden on speech. Bd. Objections 8. In the Board's view, one (or more) of three rules control:

- Restrictions on conduct are subject to no First Amendment scrutiny,
- Restrictions that incidentally affect speech are subject to intermediate scrutiny, or
- Restrictions on commercial speech are subject to intermediate scrutiny.

Dr. Hines agrees that these three rules are accurate statements of law. But for all the reasons in the briefing, none of them applies here. The Board is preventing Dr. Hines from sending emails about specific pets, but it does not restrict his communication on any other topic. That is a content-based restriction subject to strict scrutiny. As the R&R rightly concluded, there simply is no other conduct here that the Board could be regulating.

---

[2] Dr. Hines notes that his Complaint details a decade's worth of communication with pet owners without anyone ever complaining to him or the Board about bad advice. Thus, whatever hypothetical bad advice the Board fears, it has no connection to the reality of this case.

*Commercial speech*

Dr. Hines also notes that this case has never been about commercial speech. The Board's last point is that "Hines's advertisement of his Veterinary services in exchange for a fee is commercial speech and should be subject to intermediate scrutiny." Bd. Objections 9. Fair enough. If, in another case, the Board required Dr. Hines to advertise his services differently, that requirement likely would be subject to intermediate scrutiny under *Central Hudson*. But the Board is not trying to regulate Dr. Hines' commercial statements that he will give advice about animals for a nominal fee; it is trying to prevent him from giving the substantive advice itself. *That* ban is the one subject to strict scrutiny here.

## CONCLUSION

The Court should overrule the Board's objections and adopt the Report and Recommendation.

Dated: August 26, 2021.   Respectfully submitted,

/s/ Jeff Rowes
Jeff Rowes,* Attorney-in-Charge
Anya Bidwell, of counsel
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 960
Austin, TX 78701
(512) 480-5936
jrowes@ij.org
abidwell@ij.org

Andrew Ward,* of counsel
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
ahward@ij.org

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of August 2021, I electronically filed and served the foregoing using the CM/ECF system, upon the counsel of record for Defendants.

<u>/s/ Jeff Rowes</u>